UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

    Plaintiff,

Vs.                    Case No: 00-6152-CR-DIMITROULEAS

DIETRICH HAMMOND

    Defendant.
_____/

## MOTION FOR DOWNWARD DEPARTURE AND MEMORANDUM OF LAW

COMES NOW the defendant Dietrich Hammond by and through undersigned counsel and respectfully requests that this Honorable Court depart downward from defendant's sentencing guideline range of 77 to 96 months (see page 16, paragraph 69 P.S.I.R.). As grounds therefore defendant through counsel would state as follows:

### GROUNDS FOR DOWNWARD DEPARTURE

Congress explicitly provided for sentencing departures in cases where the Federal Sentencing Guidelines are applicable. See 18 U.S.C. section 3553 (b) (authorizing a departure where "there exists an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission"). "(D)epartures are an

1

important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the guidelines themselves. "District Judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." United States v. Gaskill, 991 F. 2d 82, 86 (3rd Cir. 1993).

The Supreme Court in Koon v. United States, 518 U.S. 81, 116 S. Ct. 2035 (1996), the landmark Federal Sentencing Guideline case, explained that sentencing courts have the discretion to depart from the otherwise applicable guideline range in cases which fall outside the "heartland" of the typical or ordinary case which that particular guideline describes. "The Guidelines...place essentially no limit on the number of potential factors that may warrant departure." Koon, 116 S. Ct. at 2050 (citations omitted). The Supreme Court noted, that in promulgating the Guidelines, the United States Sentencing Commission set forth nine factors which courts are forbidden to be used as a basis for departure (race, sex, national origin, creed, religion, social-economic status, lack of guidance as a youth, drug or alcohol dependence and economic hardship). Id. At 2044. However, "the Commission made clear that with those exceptions it does not intend to limit the kinds of factors whether or not mentioned anywhere else in the

guidelines, that could constitute grounds for departure in an unusual case." Koon, 116 S. Ct. at 2050, quoting United States Sentencing Guidelines Ch1 pt. A, intro., comment 4 (b).

The Supreme Court in Koon, supra., reaffirmed that the judiciary has the independence to grant departures noting that there is room under the guidelines for judges to exercise discretion. Id at 2053. The Supreme Court specifically stated that district judges must have discretion to impose individualized sentences because "(I)t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue. "We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States District Judge." Id.

Lastly Koon, makes it clear that the departure inquiry is fact based. The relevant question a court must ask is "whether the particular factor is within the heartland given all the facts of the case". Id. At 2047. In light of the Commission's treatment of departure factors, the Supreme Court approved Associate Justice Breyer's explanation that "a sentencing court considering a departure should ask the following question":

1. "What features for the case, potentially, take it outside the Guidelines' 'heartland' and make it a special or unusual case?

2. Has the Commission forbidden departures based on those features?

3. If not, has the commission encouraged departures based on those features?

4. If not, has the commission discouraged departures based on those features?"

Id. At 2045. (citation omitted).

"A distinct court's decision to depart from the Guidelines...will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Id. at 2046. Accordingly, a district court's decision to depart from the Guidelines is only reviewable on appeal for a abuse of discretion. Id. At 2046-2048.

In this case there are a number of significant grounds upon which this court could properly base a downward departure:

## ACCEPTANCE OF RESPONSIBILITY

The defendant is entitled to an additional point downward departure based on acceptance of responsibility (see paragraph 11, page 5 of the pre-sentence investigation report). See section 3E 1.1 (b) (2) of the United States Sentencing Guidelines. The defense therefore objects to paragraph

4

20 of the pre-sentence investigation report which attributed only a two point downward departure for the defendant despite his acceptance of responsibility. The defense submits that the defendant is entitled to an additional one-point departure since the only way the defendant could preserve his appellate rights was to stipulate to a bench trial.

The stipulation should not be held against the defendant since in fact the government did not have to prepare for a trial in the traditional since.

## FAMILY CIRCUMSTANCES

In addition to the foregoing the defense requests that the court consider a downward departure for exceptional family circumstances pursuant to sec 5H1.6 of United States Sentencing Guidelines (see <u>United States v. Gomez Villa</u> 59 F. 3d 1199 (11th Cir. 1995)).

As indicated in the pre-sentence investigation report after he was deported in 1998 his wife and his son had a difficult time dealing with the separation. His wife was having a hard time dealing with their son and her financial obligations. The defendant reported that his son was doing poorly in school and acting up at home. As a result, he and his wife agreed that he would return to the United States in an attempt to save their family (see page 14 paragraph 48 pre-sentence investigation report). Clearly this exceptional

5

family circumstance justifies a downward departure under 5H1.6 of the United States Sentencing Guidelines.

Moreover, as this court knows having ruled upon the defendant's Motion to Dismiss, the defendant challenged the validity of the deportation order entered in his deportation hearing. A number of the appellate issues which may very well be raised in an appeal in this matter will concern whether in fact the defendant had exhausted his administrative remedies prior to his deportation order being entered and whether or not his deportation was fundamentally unfair. Although the court has rejected the defendant's assertion, defendant will contend on appeal that his two robbery convictions arose from a single scheme of criminal misconduct. Clearly if the defendant's conduct arose from only one course of criminal activity than United States Sentencing Guidelines section 2L1.2 might apply[1]

This commentary explains that when the sentencing court finds the delineated factors in a case that case may not be within the "heartland" of the Sentencing Guidelines and the court may consider whether departure is warranted. See <u>United States v. Alfaro-Zayas</u> 196 F.3d 1338 (11th Cir. 1999). Although the commentary to 2L1.2 indicated above does not apply

---

[1] Application note 5 following section 2L1.2 states that aggravated felonies that trigger the adjustment from sub section (b)(1)(A) vary widely. If subsection (b)(1)(A) applies and (A) the defendant has previously been convicted of a felony offense (B) such offense was not a crime of violence or firearms offense and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

6

to this defendant in view of his criminal history as presently construed by this court, United States Sentencing Guidelines 2L1.2 requires that the defendant be deported for an aggravated felony before his offense level can be increased 16 levels pursuant to United States Sentencing Guidelines 2L1.2 (b)(1)(A). If the defendant has not been deported properly, then he cannot have his base offense level increased accordingly.

Moreover under section 4 A1.3 of the United States Sentencing Guidelines this court may consider if a defendant's criminal history does or does not adequately reflect the seriousness of the defendant's past criminal conduct concerning the issue of whether the defendant will commit other crimes.

In reviewing the defendant's past history of criminal conduct, it is clear that prior to the instant offense the defendant's prior offenses were committed between 1982 and 1996. It has been more than four years since the defendant committed an offense and it is respectfully pointed out that the immigration offense with which he is charged was a non-violent one.

The defendant's underlying motivation for reentering the United States existed due only to his desire to assist his wife and child because of their financial and emotional circumstances. In view of this fact, the court may consider whether a horizontal departure to a lower criminal history

category is called for. Should the court exercise its discretion and depart horizontally downward from criminal history category V to any lower level, in view of the defendant's recent lack of criminal history, the draconian effect of the aggravated felony provisions in this case could be avoided.

In view of the foregoing arguments the defense respectfully requests that the Court depart vertically and horizontally downward and fashion a sentence that is just and fair under the circumstances.

## BOTTOM OF THE GUIDELINE RANGE REQUEST

The defense requests that the defendant be sentenced at the bottom of his guideline range. This result would be proper in view of the draconian effects of the aggravated felony provisions of the United States Sentencing Guidelines.

## CREDIT FOR TIME SERVED

The defense requests that this court order that the defendant receive credit for time served since the day he was detained by immigration authorities on April 13, 2000 at the Fort Lauderdale International Airport.

This court has indicated in its Order denying the defendant's Motion to Dismiss for alleged speedy trial act violations, "that should the defendant be convicted in this case, the court may very well recommend credit for time

served while the defendant was in administrative custody" citing <u>United States v. Encarnacion</u> 56 F.2d 151 (D.P.R. 1999).[1]

Since the defendant admitted that for approximately the last ten years he has smoked marijuana and that he has never attended any drug treatment program (pre-sentence investigation report page 14 paragraph 54), he would be eligible for entrance into a drug treatment program. The defense therefore respectfully requests that this Court recommend the defendant's entry into such program administered by the United States Federal Bureau of Prisons.

WHEREFORE based upon the foregoing, undersigned counsel respectfully requests that the applications requested in this order be granted and that the court grant the defendant's motion for a downward departure.

Respectfully submitted,

*Michael B Cohen*

Michael B. Cohen, Esq.
Florida Bar No: 210196
Trade Centre South
100 West Cypress Road Ste 930
Fort Lauderdale, Florida 33309
Ph (954) 928-0059
Fax (954) 771-0434

---

[3] See attached Order of this court entered August 31, 2000 denying defendant's motion to dismiss for Speedy Trial Act violations.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and accurate copy of the foregoing Motion for Downward Departure and Sentencing Memorandum was mailed and telefaxed this 11th day of December 2000 to Eddie Ryan, Assistant United States Attorney, United States Attorney's Office, 500 East Broward Blvd. Suite 700 Fort Lauderdale, Florida 33394, and to Diane M. Plummer, United States Probation Officer, Room 315, United States Courthouse 300 N.E. First Avenue Miami, Florida 33132-2126.

_____

Michael B. Cohen

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,  CASE NO. 00-6152-CR-DIMITROULEAS

Plaintiff,

vs.

DIETRICH HAMMOND,

Defendant.

_____/

FILED by _____ D.C.

AUG 3 1 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## ORDER

THIS CAUSE having been heard upon Defendant's August 10, 2000 Motion To Dismiss Indictment With Prejudice Based on Violation of Speedy Trial Act, and the Court having reviewed the Government's August 23, 2000 Response, having received testimony from Senior Inspector Angela Lear Hernandez at a hearing held on August 30, and 31, 2000, having heard arguments of counsel, having determined credibility of witness, having reviewed the exhibits, finds as follows:

1. On June 13, 2000, the Defendant arrived at the Ft. Lauderdale Airport aboard an Air Jamaica flight. He presented an altered passport and was detained under the name Christopher Brown for an expedited removal. He could have been ordered back on the plane returning to Jamaica based upon an expedited removal. However, the turn around time for the Air Jamaica flight was too fast to accommodate the paperwork, so the Defendant was held at the Krome Detention Center overnight.

2. On April 14, 2000, the Defendant was returned to the airport for expedited removal. However, by then, the Defendant's true identity, including a prior deportation and criminal offenses, had been ascertained. The Defendant was ordered back to Krome to be re-processed to

EX 6 A

see an Immigration Judge.

3. Due to apparent negligence, the Defendant's case was not processed expeditiously. Mitch Brown, the inspector initially assigned to the Defendant's case was absent from work for a significant period of time, and he eventually quit the Immigration and Naturalization Service (INS).

4. On May 9, 2000, Senior Inspector Lear-Hernandez began to work on the case. Because of housing shortages, INS moved the Defendant to Bradenton, which further complicated the process. On May 19, 2000 Senior Inspector Lear Hernandez finally received the "A" file, which was needed to prosecute the Defendant either administratively or criminally. No criminal complaint was ever filed. However, the file was given to the United States Attorney's Office at about that time.

5. On June 6, 2000, the Defendant was indicted on three counts: Illegal Re-Entry, False Statements, and Attempted Use of an Altered Passport.

6. In this case, the Defendant was never detained for criminal charges. Therefore, any time limits regarding speedy trial were not triggered. U.S. v. Reme, 738 F. 2d 1156 (11th Cir. 1984), cert. denied, 105 S. Ct 2334 (1984). The Defendant was administratively detained for immigration purposes, certainly until at least May 24, 2000[1], when Senior Inspector Lear Hernandez decided not to seek a complaint, but to gamble on the Defendant's still being in the country on the next available date for indictment, June 6, 2000. Any delay from May 24th to June 6, 2000 would not be violative of the Defendant's speedy trial rights.

7. There is no evidence of a ruse being conducted to detain the Defendant

---

[1] There is a legal basis for INS' conducting a summary deportation proceeding reinstating a prior deportation. U.S. v. Martinez-Vitela, 183 F. 3d 1131, 1133 (9th Cir. 1999)

administratively for a later criminal prosecution. U.S. v. Ortiz-Lopez, 24 F. 3d 53, 54 (9th Cir. 1994); U.S. v. Cepeda-Luna, 989 F. 2d 353 (9th Cir. 19093). The Defendant has not satisfied the burden of proving a ruse. U.S. v. De La Pena-Juarez, 214 F. 3d 594, 598 (5th Cir. 2000). Certainly, only one day of delay in this case was attributable to the Defendant, the rest was attributable to INS' delay[2], but delays were not designated to facilitate criminal charges. Had the Defendant been deported, he would have received a windfall; no prosecution. The Defendant is not prejudiced by his not receiving that windfall.

8. Moreover, even if this Court were to have found a speedy trial violation, the Court would have found that these charges are moderately serious[3], and the delay in filing this case would not have been serious enough to warrant a dismissal with prejudice. U.S. v. Hastings, 847 F. 2d 920 (1st Cir. 1988).

9. Even if this Court had granted a dismissal with prejudice, it would not have necessarily applied to Counts One and Two, which were discovered as a basis for detention in this case after June 13, 2000 the initial detention in this case. U.S. v. Giwa, 831 F. 2d 538 (5th Cir. 1987); U.S. v. Pollock, 726 F. 2d 1456 (9th Cir. 1984); U.S. v. Cortinas, 785 F. Supp. 357 (E.D.N.Y. 1992).

10. Finally, had this Court granted a dismissal without prejudice, there is nothing to cause this Court to believe that re-indictment would not have been inevitable. U.S. v. Gambino, 59 F. 3d 353 (2d Cir. 1995).

---

[2]Should the Defendant be convicted in this case, the Court may very well recommend credit for time served while in administrative custody. U.S. v. Encarnacion, 56 F. Supp. 2d 151 (D.P.R. 1999).

[3]U.S. v. Pena-Carrillo, 46 F. 3d 879, 882 (9th Cir. 1995). There was no purposeful wrong doing in this case. The purpose of deterring prosecutional misconduct and delay would be little served by barring reprosecution in this case.

11. There was no egregious government conduct that would warrant a due process dismissal. A violation of Rule 5 in not bringing a detainee before a magistrate does not apply to civil deportations. Cepeda-Luna at 358.

Wherefore, Defendant's Motion To Dismiss on Speedy Trial violations is DENIED.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 31 day of August, 2000.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Tim Day, AFPD

Ed Ryan, AUSA